85 359
90 608

CHÁRLES HELBIG v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Railroad companies—Negligence—Staking cars—Notice of danger.*

1. The method of moving cars by "staking" is not a matter that the general public have knowledge of, and it is competent for the plaintiff in a negligence case, who was injured by the moving of a car in that manner, to show that he was ignorant of such a practice as bearing upon his own exercise of care. *Kelly v. Railroad Co.*, 65 Mich. 186.

2. A person who gives a verbal notice to another of proposed action which, unless guarded against by the party so notified, may result in his injury, and which notice it is the duty of the first party to give, must be satisfied in some way that the party to whom he addresses his conversation understands him. In such a case it is not necessary that the person so addressed should speak, but he may by bowing his head in answer to the notice, and by doing certain acts which he is requested to do as a part of the notice, so convey to the mind of the one

giving the notice information that he understands what is said as to warrant him in going away satisfied that he is understood, and he is not bound to inquire whether the person so notified understands the English language or not, but is only bound to have some information, either by the man's conduct or by his speech, that he is aware of and understands the purport of what has been said to him.

3. An instruction in a negligence case that it was the duty of the plaintiff to use his eyes and ears and watch and listen to see that a car standing near where he was at work did not move is rightly refused where under the testimony there was nothing to suggest such moving or danger from any such source.

Error to Saginaw. (Gage, J.) Argued February 5, 1891. Decided April 24, 1891.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Hanchett, Stark & Hanchett,* for appellant, contended:

1. Acts of negligence not alleged in the declaration cannot be shown; citing *Railroad Co. v. Marcott,* 41 Mich. 433; *Batterson v. Railway Co.,* 49 Id. 185; *Schindler v. Railway Co.,* 77 Id. 136; and each act of negligence relied upon must be specifically stated in the declaration; citing *Thompson v. Railway Co.,* 57 Mich. 300.

2. Staking cars is a common practice, particularly on side tracks, and is neither unlawful nor of itself negligent; citing *Kelly v. Railroad Co.,* 65 Mich. 190.

3. Switchman Bridges did not know that the plaintiff did not understand English, and in the absence of such knowledge he owed him no special duty; therefore when he gave him such warning as would be understood by men of ordinary care, intelligence, and faculties, he did all that he was required to do; citing *Bouwmeester v. Railroad Co.,* 67 Mich. 87; *Railroad Co. v. Miller,* 25 Id. 274, 279; *Railroad Co. v. Long,* 31 Amer. & Eng. R. R. Cas. 138, 143; *Railway Co. v. Smith,* 19 Id. 21, 22; *Railroad Co. v. Watkins,* 12 Id. 89; *Railroad Co. v. Cooper,* 6 Id. 5, 7; *Railroad Co. v. Manly,* 58 Ill. 300, 305.

4. The statement in the charge that the accident occurred, not by the plaintiff's failure to use his eyes and ears, but by a peculiar method of moving a car, was wholly unwarranted, and was a direct finding of fact by the court, and coming, as it did, at

the close of the charge, must have destroyed the force of the instructions on the subject of the plaintiff's contributory negligence, and certainly had great weight with the jury in determining the cause of the accident. Such suggestions are mischievous and highly improper: citing *Hewitt v. Railroad Co.*, 67 Mich. 61, 74.

5. The track itself was a warning of danger, and it was certainly negligent for the plaintiff to work in its vicinity without taking some precautions against accident; citing *Railroad Co. v. Miller*, 25 Mich. 274, 290; *Burns v. Railroad Co.*, 101 Mass. 50; and it is negligence to expose one's self in a place of known danger without taking any precaution to avoid accident; citing *Railroad Co. v. Handford*, 39 Mich. 537; *Strand v. Railway Co.*, 67 Id. 384.

6. Personal defects which impair one's ability to comprehend danger or understand warnings are no excuse, but, on the contrary, require greater vigilance by the use of the remaining faculties. If the noises about the building and his inability to understand English prevented the plaintiff from hearing ordinary signals, he knew of those facts, and was bound to increase his vigilance in other respects; citing *Railroad Co. v. Terry*, 8 Ohio St. 570; *Winn v. Lowell*, 1 Allen, 177; *Railroad Co. v. Buckner*, 28 Ill. 299.

*Charles E. Miller*, for plaintiff.

CHAMPLIN, C. J. This is an action on the case, brought by the plaintiff to recover for personal injuries received May 3, 1889, in the (then) city of East Saginaw, and alleged to have been caused by the defendant's negligence.

The accident occurred in the yard of the Feige-Silsbee Furniture Company, where plaintiff was at work upon a warehouse in process of construction in their yard. At that time there were two railroad tracks in the yard, running nearly north and south, immediately west of the warehouse. Both of these tracks were placed in the yard for the convenience of the Feige-Silsbee Company,—one by the Flint & Pere Marquette Railroad Company, which was nearest the warehouse; and the other, or westerly one, by the defendant. The track nearest the warehouse

was a switch track, and came to an end a short distance north of the warehouse. This switch track was connected with the Michigan Central track by a switch which left the main track south of Brewster street, and entered the switch track near the southerly end of the warehouse. A box-car was standing near the north end of the warehouse, and was being used by the workmen to support some scaffolding which extended out from the roof of the car.

The plaintiff is a German, 62 years old, and does not speak or understand the English language. He was in the employment of the Feige-Silsbee Furniture Company, and on May 3, 1889, at about 2 o'clock in the afternoon, was set to work on the unfinished warehouse by an officer of the furniture company, and at the time of the accident he was standing between the switch track of the Flint & Pere Marquette Road and the warehouse, nailing on boards below the doorway near the south end of the building. The doorway was $6\frac{1}{2}$ feet wide and about 4 feet from the ground. The open space under the door, which the plaintiff was enclosing, was $6\frac{1}{2}$ feet wide and about 3 feet high. The warehouse where the plaintiff was engaged is about 3 feet from the east rail of the switch, and there was about 16 inches space between the box-car and the warehouse. Within five or six minutes after the plaintiff had been placed at work, the defendant's engine entered the yard from the north on defendant's track, and came south opposite the north end of the freight-car that had been used in connection with the building of the warehouse as a support for scaffolding. After the engine had stopped near the freight car a stake was applied from the engine to the car, and the car was shoved down the Flint & Pere Marquette track against and over the plaintiff, who was thereby injured in one of his hands and in his back.

Plaintiff claimed and testified that he heard no bell or

whistle, and that no person spoke to him from the time he was set to work until after he was injured. There was testimony that the bell was rung in the yard, and there was testimony of other persons who were in the yard that they heard no bell rung. The engineer and switchman then having charge of the engine both testified that good and prudent railroading required that before moving a car under these circumstances by means of a stake it was the duty of those in charge of the engine to send a man ahead of the stationary car to give warning to any that might be there; and there was a direct and positive conflict of evidence as to whether this was done. The jury found a verdict in favor of the plaintiff, and the defendant brings the case here by writ of error.

Nineteen errors are assigned, but they are not all relied upon in this Court. Complaint is made as to the admission of testimony tending to show how far the car would run with the momentum imparted to it if the brakes were set; and also that if a person had been on the car at the time it was moving he could have seen what was ahead of the car, and what was between the building and the car; and that there was no person upon the car. It is claimed that this testimony was immaterial; that the evident purpose of it was to show or imply negligence on the part of the defendant in not having a man stationed on the box-car to set the brake if it should be necessary in order to avoid accident. The testimony shows that if the brakes had been set the car might have been stopped within 8 or 10 feet, and the record shows this car was about 60 feet from the plaintiff when it started. It is claimed that the effect of this evidence was prejudicial to the defendant; that there is no allegation of negligence in the declaration for failure to station a man on defendant's box-car; that the only negligence complained of is the failure of the defendant—

"In running its cars and engines in the yard to blow whistles and ring bells, and in running its cars within said yard to take such precautions as not to hurt and injure the men working in said yard; and, further, that it was the duty of said defendant not to leave its freight-cars standing on its track so near to the platform of said Feige-Silsbee Company; and it was the further duty of said defendant, when with its engines it undertook to move the car so standing near said platform, to move the same in such manner that the person or persons in charge of such engine could keep a lookout to see that no person should be injured; and further, it was the duty of said defendant not to approach such car, and bump the same violently ahead, without taking precautions against injuring the persons so employed in said yard."

We do not think that the testimony was introduced for the purpose of showing a distinct act of negligence in the defendant in not having a brakeman on the car, but it was proper to introduce the testimony in order to show the situation and surroundings at the time and place of the accident. No claim was made that the company was negligent in not having a brakeman upon the car, and the court in his charge to the jury strictly confined the plaintiff to the negligence alleged in his declaration.

It is also claimed that the court was in error in permitting testimony to be given by the plaintiff tending to show that he never saw a car standing upon one track moved by an engine standing upon a different track, and that he had no knowledge at that time of that kind of work. Defendant's counsel contend that this evidence conveyed to the jury the impression that the defendant owed a different and special duty to one who had no knowledge of the method of staking cars, and it also presented an excuse for the plaintiff's lack of watchfulness. We do not think the testimony objectionable. The method of moving cars by staking is not a matter that the general public have knowledge of, and it was

competent for the plaintiff to show that he was ignorant
of such a practice as bearing upon his own exercise of
care.

The eighth and ninth assignments of error relate to the
refusal of the court to charge as requested by defendant's
counsel as follows:

"5. If you find that defendant's switchman called to
the plaintiff, warning him to get out of the way, in a
tone of voice loud enough and distinct enough to be
heard by a person possessing ordinary faculties, standing
where the plaintiff was, the defendant did its whole duty
towards the plaintiff, and had a right to presume that
the plaintiff would obey the warning; and your verdict
must be for the defendant."

"8. The fact that other workmen in and about the
warehouse were making considerable noise by pounding
and otherwise, so that the plaintiff would have difficulty
in hearing proper signals and warnings which might be
given by the defendant's employés, placed upon the
plaintiff the duty of being *more* watchful and cautious
than would have been necessary had there been no such
noises. The law declares that a railroad track, and even
a side track, is of itself a warning of danger. The
plaintiff must have been aware of the noises made by the
men about the building. Therefore, if you find that the
plaintiff was not *more cautious* and watchful than an
ordinarily prudent man would have been in the same
position in the absence of such noises, the plaintiff cannot
recover."

The court instructed the jury upon the subject-matter
of the fifth request as follows:

"I have before remarked to you that it was the duty
of the agents of the railroad company at that time, before
the engine moved and applied any force to that freight-
car standing in that position, to go back of the car,—
that is, south, in the direction where this plaintiff was
at work,—and ascertain the condition of affairs at that
point. Mr. Bridges testified that he did go; that, before
he gave the signal to start the engine and move the car,
he went to the rear of the building, and saw a party at
work there at the point where this plaintiff was at work;
that he informed him that they were about to move that

car, and instructed him to take some boards that projected out from the warehouse over the track away from the track, and that he took those boards away, and that it is his remembrance that he placed them between the two tracks, the outer and the inner siding. He also says to the jury that, when he spoke to the party there at work, the party nodded to him,—bowed his head in recognition of what he said; that he did not speak, but bowed his head, and proceeded to take away the boards.

"If you find as a matter of fact, gentlemen of the jury, that the agent of the railroad company did go to the rear, did inform the plaintiff; if you find that the party with whom Bridges talked was the plaintiff in the case, and that Bridges did say to him that they were going to move that car, and to take the boards away, and he bowed in such a manner as to convey to Bridges' mind that he understood what Bridges said,—then the railroad company did give proper notice. They were not negligent in that respect. A party giving such notice—a verbal notice—must not only give notice, but he must be satisfied in some way where he gives notice under these circumstances that the party to whom he addressed his conversation understood him. It is not necessary that the man should speak. If by bowing his head and by doing certain acts, such as conveying away the lumber, he conveyed to Bridges' mind the information that he understood what Bridges told him, Bridges might well go away satisfied that the party understood him. He is not bound to inquire whether he understands the English language or not; he is only bound to have some information, either by the man's conduct or by his speech, that he is aware and understands the purport of what he has said to him. The plaintiff denies this. He says he received no such notice; no one spoke to him; he was directed by no person to take the boards away. He flatly contradicts the agent of the railroad company in this respect. This presents a question of fact for the jury to determine. You must be satisfied that the burden of proof in this case establishes that the notice was not given, before you can find the defendant company negligent in this respect."

The charge fully covers the law of the case as developed by the testimony, and the defendant was not entitled to have its fifth request given.

As to the other request, bearing upon the plaintiff's care or want of care, we do not think that the plaintiff was called upon, under the circumstances in which he was placed, to be more cautious and watchful than an ordinarily prudent person would have been in the same position in which the plaintiff was placed; nor do we think it would be proper for the court to instruct the jury that, though exercising that degree of care and watchfulness that an ordinarily prudent man would observe in the position in which he was placed, the plaintiff could not recover unless he was more cautious and watchful than an ordinarily prudent man would have been in the same position in the absence of the noises caused by the pounding and otherwise in constructing the warehouse. The court fully and fairly expressed the law to the jury upon this point in his charge as follows:

"With regard to the care required by the plaintiff, was he guilty of what we call 'contributory negligence;' that is, did he by his own negligence contribute to the injury? Even if no notice was given, would the accident or injury have been prevented had he exercised himself personally ordinary care; that is, that degree of care which persons of ordinary care and prudence would use and employ under the same and similar circumstances? In considering that subject, gentlemen of the jury, I leave that to the jury to decide as a question of fact. In the first place, the plaintiff was not a trespasser on the premises. The case to my mind is different somewhat from what it would be had the plaintiff gone upon the property of the railroad company. Had he entered the ordinary switching yards of the railroad company, gone in on their right of way, he would have been a trespasser there,—a person there without right; but upon these premises he was not a trespasser; he was lawfully there. It was a private yard. The property was owned by his employers. He was there in their employ. He was carrying out their orders in what he did, and therefore he was lawfully there in front of that warehouse assisting in its construction. In determining this question of his care, the length of time that elapsed from

the time that Mr. Feige directed him to go to that point and the time the accident occurred would be taken into consideration by the jury. Mr. Feige gives you some idea of the time which elapsed by stating his movements. He went there with the plaintiff, directed him what to do, and then he told you what he did from that time up to the time of the accident. This time is important, because it was a short period of time which the plaintiff had to view the surrounding premises.

"The method of moving the car should also be taken into consideration by the jury. You are to determine whether a person exercising the ordinary care and prudence, who had no knowledge of this method of staking cars,—whether he would have supposed, even if the engine came in upon the outer track, that the car upon the track next to the warehouse would be moved by that engine in this manner. The evidence shows that the track next to the warehouse terminated a short distance above the warehouse. No engine could come upon the track from that direction. An engine could come upon the track from the south. An engine could also cross the switch between the two tracks. Would a person of ordinary care and prudence, gentlemen, hearing the bell upon the engine, have supposed that the engine was going to back up on the outer track, and move a car on the inner track by means of a stake? That is a question for the jury to consider. If the plaintiff by exercising ordinary care and prudence under these circumstances could have avoided the injury, he cannot recover. I leave that to the jury."

The seventeenth assignment of error relates to the refusal of the court to charge the jury, as requested by defendant's counsel, as to whether, as a matter of law, the plaintiff could go there and do his work, absorbing himself in it, relying entirely upon signals, and not exercising his own senses at all. The court, in response to this request, stated:

"Gentlemen of the jury, the counsel wishes a charge which I will give you. I state to you, gentlemen of the jury, as a matter of law, that the plaintiff had a right, while he was there at work, to presume that the car standing north of the inner track, being used at the

time he was set to work as a staging, would not be moved on that track unless it was moved by a direct action of the engine coupled to it, or would not be moved until he had received some warning that it was about to be moved. The plaintiff was bound, of course, to exercise his eyes and his ears as to the movement of the engine upon the track; but this accident did not occur in that way; it occurred by a peculiar method of moving a car."

Mr. Stark, the counsel for the defendant, then stated to the court:

"The plaintiff says he went to work there on the building. What I want to ask your honor to charge the jury is whether he may go to work there, and rely entirely and solely on signals, or whether he must use his senses."

The court replied that, should he see this car moving, of course he would have to use his senses then. Mr. Stark rejoined: "I refer to the time while he was at work." The court replied: "I think I have covered the facts in the case."

It is claimed by the defendant's counsel that the most objectionable feature of this part of the charge is the statement that the accident occurred, not by the plaintiff's failure to use his eyes and ears, but by the peculiar method of moving the car. It is suggested that this statement was wholly unwarranted, was a direct finding of fact by the court, and must have had the effect to detract from the force of the instructions on the subject of the plaintiff's contributory negligence.

We do not think that the jury were misled or prejudiced by the remark of the court as to the peculiar manner in which the car was moved. The evident meaning of the court was that it was the unusual manner in which the car was moved, and referred directly to the testimony in reference to moving a car upon one track

by an engine situated upon another track, through the means of a stake. We think it would be requiring too much of a person circumstanced as the plaintiff was, with a car upon the dead end of a switch, and being used at the time as a part of the staging by the men employed in constructing the warehouse, and where no motive power could apparently approach the car from the north to set it in motion, that he should keep a watch and lookout upon the car to see that it did not move from its position towards him while he was engaged at his work upon the building. There was nothing to suggest danger, and nothing from which danger could be inferred from the situation, and we think that the request of the defendant's attorney to the effect that it was his duty to use his eyes and ears and watch and listen to see that the car did not move was rightly refused. That rule of law does not apply to the facts in this case.

There are other exceptions to the charge as given to the jury, but we perceive no error in the record, and the judgment must be affirmed.

The other Justices concurred.